IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-56-F

| | |
|---|---|
| JASON SHUPE, CHRISTY SHUPE, N. SHUPE, minor, and M. SHUPE, minor )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>HEIDI BAUR, KIM BAILEY, and KIM WINSTON, )<br>)<br>Defendants. | **ORDER** |

This matter is before the court on the Defendants' Motion for Summary Judgment [DE-27]. *Pro se* Plaintiffs Jason Shupe and Christy Shupe have filed a response, and the time for filing a reply has passed. For the reasons stated below, the Motion for Summary Judgment [DE-27] is ALLOWED.

## I. PROCEDURAL BACKGROUND

Plaintiffs initiated this action by filing a complaint [DE-1] in this court, asserting claims on behalf of the themselves and their two minor daughters. The claims arise out of the temporary removal of the daughters from Christy Shupe's custody due to alleged child abuse and neglect and the order that Jason Shupe have no contact whatsoever with his daughters. Plaintiffs name as Defendants Heidi Baur, the Director of Onslow County Department of Social Services, Kim Bailey, an In Home Services Supervisor for the Child Protective Services Unit of the Onslow County Department of Social Services, and Kim Winston, a Program Manager of the Child Protective Services Unit of the Onslow County Department of Social Services. Plaintiffs appear to be asserting claims pursuant to 42 U.S.C. § 1983 for violation of their Fourth and

Fourteenth Amendment rights and for alienation of affection under North Carolina law. Plaintiffs also reference a number of North Carolina statutes.

Defendants moved to dismiss the claims of the minor Plaintiffs, and the court allowed the motion in an order filed on September 30, 2014 [DE-15]. Defendants now move for summary judgment on the claims asserted against them.

## II. FACTUAL BACKGROUND

Plaintiffs Jason and Christy Shupe are a married couple. Baur Aff. [DE-27-1] ¶ 5. Defendants contend that on or around March 7, 2011, Plaintiff's minor child, M.S., disclosed that her father, Jason Shupe, touched her inappropriately. *Id.* ¶ 6. At the time, Jason Shupe had pending criminal charges of felony indecent liberties with a minor; contributing to the delinquency of a minor; misdemeanor resisting a public officer; soliciting a child by computer; and misdemeanor soliciting crimes against nature involving an unrelated minor child. *Id.* ¶ 6, Ex. A (Juvenile Petition). Plaintiffs' other biological minor child, N.S., resided in the home during the time that M.S. disclosed the inappropriate sexual contact with her father. *Id.* ¶ 6.

Based on the allegations of sexual abuse, the Onslow County Department of Social Services instituted a safety assessment under which Jason Shupe was to leave the home he shared with Christy Shupe and have no contact with the minor children, pending the conclusion of the Child Protective Services investigation. *Id.* ¶ 7; *see also* Safety Assessment [DE-35-1]. Defendants contend that on or around April 11, 2011, both Jason and Christy violated the safety assessment because Christy allowed her husband to have contact with the minor children. Baur Aff. [DE-27-1] ¶ 8. Although both Christy and Jason have submitted affidavits stating that they "have cooperated with the defendants at all stages to the best of my ability," they do not submit

2

any evidence showing that Defendants did not have reason to believe they violated the safety assessment. *See* C. Shupe Aff. [DE-36] p. 1, ¶ 4; J. Shupe Aff. [DE-36] p. 1, ¶ 4.

Defendants contend that the minor children were then placed out of the home on April 11, 2011, and were residing with a family friend of the Shupes until June 10, 2011. Baur Aff. [DE-27-1] ¶ 8. Defendants assert that on June 16, 2011, the family friend notified the Department of Social Services that Christy removed the minor children from the placement. *Id.* ¶ 9. Defendants also contend that Jason and Christy refused to disclose the location of the minor children. *Id.* Via unsworn statements, Jason and Christy contend, however, that Kim Bailey and the social worker assigned to the investigation, Lena Simpson (who is not named as a defendant) "[k]new at all times where the minor children were . . . ." Pls. Opp. to Mot. for Summ. J. [DE-35] at 1.

On June 17, 2011, Lena Simpson filed a Juvenile Petition with the Onslow County District Court. *Id.* ¶ 10, Ex. A (Juvenile Petition). In an affidavit attached to the Juvenile Petition, Simpson averred that (1) M.S. disclosed that Jason had on more than one occasion touched her vaginal area or made her touch his penis; (2) Jason's pending criminal charges, including soliciting a child by computer; (3) that another juvenile, N.S., resided in the home when M.S. disclosed the inappropriate contact; (4) Christy and Jason denied the allegations made by M.S.; (5) the terms of the safety assessment, and the Shupes' violation of the safety assessment; (6) the placement of the children with a family friend; (7) Christy's removal of the children on June 10, 2011, and (8) the Shupes' refusal to disclose the location of the children. *See* Baur Aff. [DE-27-1], Ex. A (Juvenile Petition and Aff.). The affidavit requested, *inter alia*, that court adjudicate M.S. as abused and neglected and N.S. as neglected, grant full custody of the children to Onslow

3

County Department of Social Services, and require Christy and Jason to disclose the location of the children. *Id.*

Magistrate Judge T. Wade Horne signed the Order for Nonsecure Custody on June 17, 2011, finding that the minor children were exposed to a substantial risk of physical injury and/or sexual abuse. Baur Aff. [DE-27-1] ¶ 11, Ex. B (Order for Nonsecure Custody). This order placed the children into the nonsecure custody of the Onslow County Department of Social Services. *Id.*

Three days later, on June 20, 2011, Presiding Judge Sarah C. Seaton held a hearing to determine the need for the continued nonsecure custody of the Plaintiffs' minor children. Baur Aff. [DE-27-1] ¶ 12. Both Shupes attended the hearing and were represented by separate counsel. An order issued by Judge Seaton found as a fact that the Shupes initially refused to give the location of the children, but told the court at the hearing that the minor children were residing in Twin Peaks, California. Baur Aff. [DE-27-1] Ex. C (July 12, 2011 Order). The court found that the best interests of the minor children would be served by continuing custody with the Onslow County Department of Social Services. *Id.* The court also ordered the return of the minor children to Onslow County, North Carolina for placement in the discretion of the Department of Social Services. *Id.*

On August 15, 2011, Presiding Judge James L. Moore, Jr., held an adjudication hearing on the Juvenile Petition alleging that minor child, M.S., was abused and neglected and alleging that minor child, N.S., was neglected. Baur Aff. [DE-27-1] ¶ 13. The Onslow County Department of Social Services proceeded only on the issue of neglect with regard to the two children, and did not proceed on the issue of abuse of M.S. *See* Baur Aff. [DE-27-1], Ex. C (Sept. 2, 2011 Juvenile Adjudication and Disposition Order). Social Worker Lena Simpson

4

testified at the adjudication hearing. *Id.* Jason and Christy, through their attorneys, did not contest the adjudication and offered no evidence at the hearing. *Id.* Judge Moore found as fact that Jason had not completed any of the activities that were recommended by the Onslow County Department of Social Services. *Id.* Judge Moore also found as fact that Jason stated that his attorney advised him not to complete the psychosexual assessment or the psychological assessment as recommended by the Department of Social Services. *Id.* Judge Moore adjudicated the minor children neglected, and grated legal custody of the children to the Onslow County Department of Social Services. He ordered, however, that the children be placed with Christy. He also ordered that Jason "have no contact whatsoever, whether direct or indirect, with the juveniles." *Id.* The court also ordered Jason to complete a psychosexual assessment. *Id.* Defendants contend that Jason has never complied with the court's order. Baur Aff. [DE-27-1] ¶ 14.. Plaintiffs, again through unsworn assertions, state that Jason completed his assessments before May of 2013. Pls. Opp. to Mot. for Summ. J. [DE-35] at 2.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Such facts must be presented

5

in the form of exhibits and sworn affidavits. *Celotex Corp.,* 477 U.S. at 324. Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

Defendants argue that Plaintiffs' claims are untimely, or there is insufficient evidence to support them. Because the court agrees that Plaintiffs have failed to proffer insufficient evidence to support their claims, the court concludes that summary judgment is appropriate and the court will not reach the timeliness issue.

### A.     Section 1983 Claims

Jason and Christy assert claims under § 1983, alleging that Defendants violated their rights under the Fourth and Fourteenth Amendments. Plaintiffs appear to be asserting a substantive due process claim, *see* Pls. Opp. to Mot. for Summ. J. [DE-35] at 3, but out of an abundance of caution, the court will treat the claims as also asserting a procedural due process claim. That is, the court will view Plaintiffs' claims as alleging Defendants violated their parental rights, which are protected by the due process clause of the Fourteenth Amendment, and as alleging that their rights to due process of law were violated.

"To [establish] a claim under § 1983, a plaintiff must [prove] the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see Filarsky v. Delia,* —— U.S. ——, 132 S.Ct. 1657, 1661-62 (2012); *Philips v.*

6

in the form of exhibits and sworn affidavits. *Celotex Corp.,* 477 U.S. at 324. Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

Defendants argue that Plaintiffs' claims are untimely, or there is insufficient evidence to support them. Because the court agrees that Plaintiffs have failed to proffer insufficient evidence to support their claims, the court concludes that summary judgment is appropriate and the court will not reach the timeliness issue.

### A.     Section 1983 Claims

Jason and Christy assert claims under § 1983, alleging that Defendants violated their rights under the Fourth and Fourteenth Amendments. Plaintiffs appear to be asserting a substantive due process claim, *see* Pls. Opp. to Mot. for Summ. J. [DE-35] at 3, but out of an abundance of caution, the court will treat the claims as also asserting a procedural due process claim. That is, the court will view Plaintiffs' claims as alleging Defendants violated their parental rights, which are protected by the due process clause of the Fourteenth Amendment, and as alleging that their rights to due process of law were violated.

"To [establish] a claim under § 1983, a plaintiff must [prove] the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see Filarsky v. Delia,* —— U.S. ——, 132 S.Ct. 1657, 1661-62 (2012); *Philips v.*

6

*Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a § 1983 plaintiff must prove the personal involvement of a defendant in causing the plaintiff's injuries. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92, (1978); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

### 1. Substantive Due Process

The court finds that Plaintiffs have failed to raise a genuine issue of material fact as to whether any of the individual defendants violated Jason's or Christy's substantive due process rights under the Fourteenth Amendment.

The Fourteenth Amendment protects the "fundamental right of parents to make decisions concerning the care, custody, and control of their children;" however, the right is not absolute. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *White by White v. Chambliss*, 112 F.3d 731, 735 (4th Cir. 1997). "The parent's right to custody is subject to the child's interest in his personal health and safety and the state's interest as *parens patriae* in protecting that interest." *Chambliss*, 112 F.3d at 735; *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391-92 (4th Cir. 1990) (applying a "shock the conscience" test to determine whether social workers violated the plaintiff's constitutional rights by removing a child from his custody in an emergency action).

In this case, Plaintiffs have failed to come forward with evidence, other than their unsworn assertions, that any of the individual Defendants engaged in actions that would shock the conscience. *Weller*, 901 F.2d at 391 ("It does not shock the conscience to hear that defendants removed a child in an emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse."). To the contrary, the only admissible evidence shows that when a social worker with the Onslow County Department of Social Services was told by M.S. that Jason had touched her inappropriately, and that Jason was facing

7

several criminal charges, including soliciting crimes against nature with an unrelated minor child, the social worker instituted a Safety Assessment plan under which Jason was to leave the home he shared with Christy and have no contact with the minor children, pending the conclusion of the Child Protective Services investigation. When Jason and Christy violated this Safety Assessment, the minor children were placed out of the home. When the Onslow County Department of Social Services was later notified that Christy had removed the children from the third-party custodian and would not reveal their location,[1] the department filed a Juvenile Petition on the basis of neglect. The court cannot find that these actions shock the conscience; to the contrary, if the assigned social workers did not take action under these facts, they could have been found to have abdicated their duties.

Although Plaintiffs argue, in their unsworn assertions, that the various Defendants should have credited their version of events and evidence, the court cannot find, on the record before it, that Defendants' failure to do so was so clearly arbitrary that it shocks the conscience. *See Crawford v. Washington Cnty. Children & Youth Servs.*, 353 F. App'x. 726, 730 (3d Cir. 2009) (affirming summary judgment on parent's substantive due process claim where "[t]he gist of the claim is that Appelless failed to properly evaluate [the child's] recantation of sexual abuse" but parents failed to present evidence in support of the assertion). Because the actions of the individual Defendants did not "shock the conscience," Plaintiffs' substantive due process rights were not violated. *See Chambliss*, 112 F.3d at 736.

---

[1] The court recognizes that Plaintiffs contend they had informed Department of Social Services employees about their removal of the children and the children's location in California. The only admissible evidence in the record, however, is to the contrary.

8

## 2. Procedural Due Process

Nor have Plaintiffs come forward with evidence showing that their procedural due process rights were violated. To the extent that Plaintiffs are alleging that Defendants failed to comply with certain state laws, "it is well settled that violations of state law cannot provide the basis for a due process claim." *Weller*, 901 F.2d at 392 (explaining that parent had "no property or liberty interest in the specific investigative procedures [prior to the child's removal from the parent] which he contends were neglected"); *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994) ("The fact that Defendants' acts may have violated various Maryland statutory provisions [regarding child abuse investigations and record keeping] is of no consequence in a § 1983 action, since a State's violation of its own laws or procedural rules, creating rights beyond those guaranteed by the Constitution, cannot support a federal due process claim."). Otherwise, the admissible evidence in the record establishes that Jason and Christy were afforded an opportunity to be heard in a timely manner by the state court. There is no evidence in the record that could establish a procedural due process claim.

## 3. Fourth Amendment

The record also is devoid of creating a genuine issue of material fact regarding any violation of Jason's or Christy's Fourth Amendment rights. As best as the court can tell, the theory of the Shupes' claim is that they did not consent to a medical exam for M.S., and therefore the exam conducted by the Onslow County Department of Social Services violated their Fourth Amendment rights. *See* Pls. Opp. to Mot. for Summ. J. [DE-35] at 1 ("There was never . . . any consent to any medical procedures from the defendants."); Ex. B [DE-35-2] (stating that Christy Shupe's child had received an interview and medical examination at the Child Advocacy Center of Onslow County). There is, of course, no admissible evidence

supporting these alleged facts. Even if there was admissible evidence, however, it would not support the idea that either Jason's or Christy's Fourth Amendment rights were violated. This is because "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Thus, whether the medical exam could be characterized as an unreasonable search or seizure, M.S. was the individual allegedly searched or seized, and she is the individual who would have a Fourth Amendment claim, not her parents. *See Parker v. Austin*, No. 5:14CV00035, 2015 WL 1925505, at *3 (W.D. Va. Apr. 28, 2015) ("[S]ince JF and KF were the only individuals allegedly seized, the parent-plaintiffs may not assert a claim for violation of the Fourth Amendment as pleaded."); *Lore v. Wilkes*, No. 1:12CV165, 2013 WL 5935072, at *5 (M.D.N.C. Nov. 1, 2013) (dismissing as frivolous parents' claim that their Fourth Amendment rights were violated by county's interview of children without their consent).

### 4. Supervisory Liability

Plaintiffs also contend that the individual defendants did not adequately respond to Jason and Christy's complaints surrounding the investigation of child abuse. *See, e.g.* Pls. Opp. to Mot. for Summ. J. [DE-35] at 2 (stating that Defendants "violated the 4th and 14th amendments but [sic] not doing their due diligence and thoroughly looking into allegations by the plaintiffs of wrongdoing by their social workers which in turn makes them liable and accessories"). The court construes this as Plaintiffs' attempt to establish a claim for supervisory liability against the individual defendants. In order to establish a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injuries to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference

10

to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted). Here, as the court already has discussed, Plaintiffs have not proffered sufficient evidence of any constitutional injury. A constitutional injury is essential to establish the third element of a supervisory liability claim, and as such the individual defendants are entitled to summary judgment as to any such claim against them premised on supervisory liability.

### 5. Municipal Liability Claims

To the extent that the § 1983 claim is asserted against the defendants in their official capacity, the claim is one against Onslow County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that an official-capacity suit is another way of pleading an action against an entity of which an officer is an agent); *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 29 (4th Cir. 2001) ("[A] suit against a government official in his official capacity is treated as a suit against the government entity of which the official is an agent."); *Moua v. Alexander Cnty.*, No. 5:09CV19-V, 2012 WL 252648, at *7 (W.D.N.C. Jan. 26, 2012) ("[T]he official capacity claim against Defendant Karen Hoyle, as Director of DSS, is merged with Plaintiffs' claim against Alexander County."). Although a local government entity, like Onslow County, may be held liable under § 1983, it is well settled that a local government entity cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 690-91. Rather, to establish liability of the entity, a plaintiff must show that: (1) a government actor deprived the plaintiff of her federal rights; and (2) the harm was the result of municipal policy or custom. *Id.*

11

As is the case with the supervisory liability theory, Plaintiffs' failure to come forward with evidence of an constitutional injury precludes any claim proceeding on a municipal liability theory. Moreover, even if Plaintiffs had proffered sufficient evidence to support their allegations they had suffered a constitutional violation, they have not pointed to any official policy or custom of Onslow County which would have caused such a constitutional injury. Although Plaintiffs suggest it is Defendants' burden to show that policies and customs pass constitutional muster, they are mistaken. *See Tetreault v. Advanced Fed. Servs. Corp.*, No. 4:11CV159, 2012 WL 4479977, at *2 (E.D. Va. Sept. 28, 2012) *aff'd,* 510 F. App'x 300 (4th Cir. 2013) ("Plaintiffs, no matter what the cause of action asserted, are always required to establish first the elements of their claim through evidence, such as through sworn testimony or documents. Plaintiffs are never permitted to rely on unsubstantiated assertions only.").

Plaintiffs have failed to come forward with evidence which would support their § 1983 claim under any of the possible theories suggested by their Complaint and their response to the motion for summary judgment. Accordingly, Defendants' motion for summary judgment is ALLOWED as to Plaintiffs' § 1983 claim.

**B.  State-law tort claims**

To the extent Plaintiffs have asserted any state-law tort claims, Defendants are entitled to summary judgment. As to any state-law tort claims asserted against Defendants in their official capacity, they must be deemed to be against Onslow County. Under North Carolina law, "a public officer sued in his official capacity is simply another way of suing the public entity of which the officer is an agent." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 654, 543 S.E.2d 901, 904 (2001). *See Hobbs v. N.C. Dep't of Human Res.*, 135 N.C. App. 412, 422, 520 S.E.2d 595, 603 (1999) (determining that county social workers were public officials).

Under the doctrine of governmental immunity, a county is immune from suit based on torts committed by its employees in the exercise of governmental functions absent waiver of immunity." *Meyer v. Walls,* 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citation omitted). A county may waive its sovereign immunity by purchasing liability insurance pursuant to N.C. Gen. Stat. § 153A–435(a). In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. *Clark v. Burke County,* 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994). Absent such an allegation, the complaint fails to state a cause of action. *Warren v. Guilford Cnty.,* 129 N.C. App. 836, 838, 500 S.E.2d 470, 472 (1998).

Here, the Defendants, in investigating allegations of child abuse, were performing a governmental function. *Hare v. Butler,* 99 N.C. App. 693, 699, 394 S.E.2d 231, 235 (1990) ("Investigations by a social service agency of allegations of child sexual abuse are in the nature of governmental functions. "). Onslow County is entitled to governmental immunity, accordingly, unless it has waived it. There is no allegation in the complaint, however, that Onslow County has waived governmental immunity, nor is there any evidence in the record supporting such an inference. Accordingly, to the extent that any state tort claims are asserted against the defendants in their official capacity, they must be dismissed on the basis of governmental immunity. *See Hare,* 99 N.C. at 699, 394 S.E. at 239 ("[D]ismissal of the negligence claim against Mecklenburg County was proper because . . . plaintiff's complaint does not allege or provide any evidence that Meckleburg County or the DSS has purchased liability insurance, thus failing to show that these entities or their employees have waived governmental immunity.").

13

Additionally, the individual defendants are entitled to public official immunity for tort claims asserted against them in their individual capacities. In North Carolina, official immunity protects a public official performing discretionary acts in the course of his official duties from suit in his individual capacity, so long as the public official acted without malice or corruption or outside the scope of his official duties. *Evans v. Chalmers,* 703 F.3d 636, 656-67 (4th Cir. 2012). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *In re Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E. 2d 888, 890 (1984). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* at 890-91 (internal quotation marks omitted). There is no admissible evidence in the record supporting the idea that any of the individual defendants acted with malice, corruption, or outside the scope of their official duties. Accordingly, any state-law tort claims asserted against them in their individual capacities also must be dismissed on the basis of public official immunity.[2]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE-27] is ALLOWED. The Clerk of Court is DIRECTED to close this case.

---

[2] Alternatively, the court finds that only truly discernable common law claim attempted to be asserted by the Plaintiffs, alienation of affection, fails for lack of evidence. *McCutchen v. McCutchen,* 360 N.C. 280, 624 S.E.2d 620 (2006) ("To establish a common law claim for alienation, a plaintiff must prove (1) that she and her husband were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; and (3) that the wrongful and malicious acts of the defendant produced and brought about the loss and alienation of such love and affection.") (internal citations, quotation marks and alterations omitted). Additionally, although Plaintiffs cite to many statutes in the Complaint and their opposition to the motion for summary judgment, none of those statutes explicitly create a private right of action, nor can the court find that they implicitly create a right of action. *See Lea v. Grier,* 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (explaining that under North Carolina, "a statute allows for a private cause of action only where the legislature has provided a private cause of action within the statute").

14

SO ORDERED. This the 11 day of May, 2015.

                                              *James C. Fox*
                                              James C. Fox
                                              Senior United States District Judge